IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| TEMEKA BOOKER, ) ) Plaintiff, ) ) v. ) ) NANCY A. BERRYHILL, Deputy ) Commissioner of Operations of ) the Social Security ) Administration,[1] ) ) Defendant. | No. 16 C 8292 Magistrate Judge Maria Valdez |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff Temeka Booker's ("Plaintiff") claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Title XVI of the Social Security Act (the "Act"). The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion for summary judgment [Doc. No. 10] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted.

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. Her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 et seq., and she returned to her position of record, that of Deputy Commissioner for Operations, in November 2017. In accordance with the agency's Order of Succession, Berryhill continues to lead the SSA as it awaits the nomination and confirmation of a Commissioner. https://www.ssa.gov/agency/commissioner.html (last visited Apr. 5, 2018).

## BACKGROUND

I.  **Procedural History**

Plaintiff filed her applications for DIB and SSI on February 10, 2014, alleging a disability onset date of July 15, 2010, due to depression, mood disorder, and bipolar disorder. (R. 233–245, 288.) Her application was denied initially and again upon reconsideration. (R. 129–178.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on February 22, 2016. (R. 34–93.) Plaintiff appeared at the hearing represented by an attorney and offered testimony. (*Id.*) A vocational expert also appeared and offered testimony. (*Id.*) On March 16, 2016, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. (R. 14–33.) The Appeals Council ("AC") denied review on June 21, 2016, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005); *Herron v. Shalala*, 19 F.3d 329, 332 (7th Cir. 1994); (R. 1–6.)

II. **ALJ Decision**

On March 16, 2016, the ALJ issued an unfavorable written determination finding Plaintiff was not disabled. (R. 16–42.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 15, 2010, her alleged onset date and that she met the insured status requirements of the Act through June 30, 2017. (R. 19.) At step two, the ALJ found that Plaintiff suffered from severe impairments of degenerative disc disease of the lumbar spine and mood

disorder. (*Id.*) At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meet or medical equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926), (R. 20.)

Before step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform work at a light exertional level, subject to several limitations.[2] At step four, the ALJ concluded that Plaintiff is unable to perform her past relevant work. (R. 25.) At step five, based on Plaintiff's age, education, work experience, and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (R. 25–27.) Because of this determination, the ALJ found that Plaintiff is not disabled under the Act. (R. 27.)

---

[2] At this stage, the ALJ determined Plaintiff could perform light work, but:
> needs to alternate her position between sitting, standing, and walking for no more than five minutes out of every hour. While do so, she would not need to be off tasks. [Plaintiff] can occasionally climb ramps and stairs, and she can occasionally stop, kneel, balance, crouch and crawl, but she can never climb ladders, ropes or scaffolds. [Plaintiff] is further limited to simple, routine tasks, work involving no more that simple decision-making, no more that occasional and minor changes in the work setting, and work requiring the exercise of only simple judgment. She is further precluded from work involving direct public service, in person or over the phone, although [Plaintiff] can tolerate brief and superficial interaction with the public which is incidental to her primary job duties. She is unable to work in crowded, hectic environments. [Plaintiff] can tolerate brief and superficial interaction with supervisors and co-workers, but is not to engage in tandem tasks.

(R. 21–22.)

## DISCUSSION

### III. ALJ Standard

Under the Act, a person is disabled if he has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform his former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer to any remaining question precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one through four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## IV. Judicial Review

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.") (internal citation omitted).

The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex*

*rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning. . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

We review the ALJ's decision but we play an "extremely limited" role. *Elder*, 529 F.3d at 413. Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

V.  Analysis

Plaintiff alleges that the ALJ's decision should be remanded because: (1) he engaged in impermissible "cherry-picking"; (2) his RFC failed to account for all of Plaintiff's limitations; and (3) his credibility determination was flawed. The Court disagrees for the reasons that follow.

**A. Cherry-Picking**

To begin, Plaintiff argues that the ALJ failed to build a complete record because he did not re-contact her treating mental health professionals. An ALJ is only required to re-contact doctors if the evidence is inadequate to allow the ALJ to determine whether the applicant is disabled. 20 C.F.R. § 404.1512(e). Here, the ALJ

relied on several of Plaintiff's physical examinations, the opinion of the State Agency consultant Dr. Joseph Cools, Ph.D., and her activities of daily living including driving, caring for a minor child, and beginning employment one month before the administrative hearing when making his findings. Thus, there is no evidence that the record was inadequate to allow the ALJ to make a disability determination and Plaintiff's argument otherwise is rejected.

Second, Plaintiff contends that ALJ formulated Plaintiff's RFC based solely off of her physical limitations (as opposed to her physical and mental impairments) which amounted to impermissible cherry-picking. While ALJs are prohibited from cherry-picking, *see Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) ("An ALJ has the obligation to consider all relevant . . . evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding."), they are not required to discuss every piece of evidence in the record in favor of their determinations. *See McKinzey v. Astrue*, 641 F.3d 884, 891 (7th Cir. 2011) ("[g]enerally speaking, an ALJ's adequate discussion of the issues need not contain a complete written evaluation of every piece of evidence") (internal quotation marks and citation omitted). Furthermore, "[i]t is axiomatic that the claimant bears the burden of supplying adequate records and evidence to prove their claim of disability." *See Scheck v. Barnhart*, 357 F.3d 697, 702 (7th Cir. 2004)

Contrary to Plaintiff's argument, the ALJ articulated his consideration of Dr. Cools' mental examination findings in his decision. (R. 23–24.) Dr. Cools reviewed Plaintiff's record including her treatment in 2010 with Dr. John Chi Yuan Lui,

M.D., for depression and anxiety and in 2014 with Dr. Anjum Khatoon, M.D., for depression. (R. 118–21.)[3] Based off these records, Dr. Cools opined Plaintiff would have moderate mental limitations in her ability to understand, remember, and carry out detailed instructions, engage in social interaction, and perform more than simple tasks in a routine schedule. (R. 128.) The ALJ then adopted the findings of Dr. Cools when formulating his mental RFC determination. *See Scott v. Sullivan*, 898 F.2d 519, 524 (7th Cir. 1990) ("the ALJ may rely upon the physician's opinion to determine eligibility"). The Court finds that the ALJ did not engage in impermissible cherry-picking when he crafted his RFC determination because he did consider Plaintiff's mental impairments and accounted for her limitations based, in part, on the findings of an acceptable medical source. It follows that his determination is supported by substantial evidence.

**B. RFC**

Next, Plaintiff complains that the ALJ's RFC assessment failed to account for limitations arising from her mental impairments. "The RFC is an assessment of what work-related activities the claimant can perform despite her limitations." *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see* 20 C.F.R. § 404.1545(a)(1) ("Your residual functional capacity is the most you can still do

---

[3] In her brief Plaintiff points to several records over the course of her treatment which are signed by a Licensed Clinical Social Worker or Advanced Nurse Practioner. (R. 460, 512.) These sources are "other medical source" under the Regulations. 20 C.F.R. §§ 404.1513(a),(d). The findings of "other medical sources" are not accorded the same deference as opinions provided by "acceptable medical sources". Importantly, only "acceptable medical sources" can establish the existence of a medically determinable impairment and be treating sources whose opinions may be entitled to controlling weight. *See* 20 C.F.R. §§ 404.1513(a), (d)(1).

despite your limitations."). In determining an individual's RFC, the ALJ must consider all of her limitations which arise from medically determinable impairments, even those that are not severe. SSR 96-8p; *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). "[R]egardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable physical or mental impairment cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." *See* SSR 96-4p, at *1.

Specifically, Plaintiff alleges that the ALJ should have concluded that she experienced marked, as opposed to moderate, difficulties in social functioning and concentration, persistence, or pace. Plaintiff points to several medical records which, according to her, the ALJ failed to consider, including the fact that she lacked motivation, experienced panic in social situations, and can no longer read due to an inability to concentrate.

As an initial issue, Plaintiff does not point to any evidence from an acceptable medical source which states that this evidence would amount to marked difficulties in social functioning or concentration. Rather, it is merely Plaintiff's position that this evidence should translate to a more restrictive RFC. This is not an argument which results in remandable error. *See Lopez v. Astrue*, 807 F. Supp. 2d 750, 763 (N.D. Ill. 2011) (stating a claimant's counsel must not play doctor).

More to the point, the ALJ did consider the entirety of Plaintiff's record. In particular, the ALJ relied on the findings of State Agency consultant Dr. Cools who,

9

after examining all the evidence Plaintiff cites, determined that she would have only a moderate limitation in social functioning and concentration, persistence, and pace. (R. 128.) The ALJ adopted this opinion when formulating his RFC and explained that it was an "accurate representation of [Plaintiff's] mental [RFC]." (R. 24.) The fact that Plaintiff may have weighed this evidence differently does not amount to a remandable error under the applicable rules and law. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990) (stating that where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner).

**C. Credibility**

Finally, Plaintiff next argues that the ALJ improperly assessed her subjective symptom statements and credibility.[4] An ALJ's credibility determination is granted substantial deference by a reviewing court unless it is "patently wrong" and not supported by the record. *Schmidt v. Astrue,* 496 F.3d 833, 843 (7th Cir. 2007); *Powers v. Apfel,* 207 F.3d 431, 435 (7th Cir. 2000); *see also Elder,* 529 F.3d at 413 (holding that in assessing the credibility finding, courts do not review the medical

---

[4] In 2016, the Commissioner rescinded SSR 96-7p and issued SSR 16-3p, eliminating the use of the term "credibility" from the symptom evaluation process, but clarifying that the factors to be weighed in that process remain the same. *See* SSR 16-3p, 2016 WL 1119029, at *1, *7 (March 16, 2016). The ruling makes clear that ALJs "aren't in the business of impeaching claimants' character," but does not alter their duty to "assess the credibility of pain *assertions* by applicants, especially as such assertions often cannot be either credited or rejected on the basis of medical evidence." *Cole v. Colvin*, 831 F.3d 411, 412 (7th Cir. 2016) (emphasis in original). However, the SSA recently clarified that SSR 16-3p only applies when ALJs "make determinations on or after March 28, 2016," and that SSR 96-7p governs cases decided before the aforementioned date. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017). The ALJ issued his opinion on March 25, 2014. (R. 57.) Therefore, the ALJ properly applied SSR 96-7p. Nonetheless, SSR 16-3p will apply on remand. *See* Notice of Social Security Ruling, 82 Fed. Reg. 49462 n.27 (Oct. 25, 2017).

evidence *de novo* but "merely examine whether the ALJ's determination was reasoned and supported"). An ALJ must give specific reasons for discrediting a claimant's testimony, and "[t]hose reasons must be supported by record evidence and must be 'sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.' " *Lopez ex rel. Lopez v. Barnhart,* 336 F.3d 535, 539–40 (7th Cir. 2003) (quoting *Zurawski,* 245 F.3d at 887–88); *see* SSR 96-7p, 1996 WL 374186, at *4 (S.S.A. 1996).

The lack of objective evidence is not by itself reason to find a claimant's testimony to be incredible. *See Schmidt v. Barnhart,* 395 F.3d 737, 746–47 (7th Cir. 2005). When evaluating a claimant's credibility, the ALJ must also consider "(1) the claimant's daily activity; (2) the duration, frequency, and intensity of pain; (3) the precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; and (5) functional restrictions." *Scheck,* 357 F.3d at 703; *see also* SSR 96-7p at *3. An ALJ's "failure to adequately explain his or her credibility finding . . . is grounds for reversal." *Minnick v. Colvin*, 775 F.3d 929, 937 (7th Cir. 2015).

Here, Plaintiff raises several challenges to the ALJ's adverse credibility determination, arguing that the ALJ improperly assessed her credibility based upon "cherry picking and unsupportable speculation." (Pl.'s Br. at 12.)

First, Plaintiff claims that the ALJ impermissibly equated her ability to perform activities of daily living to an ability to perform full-time work. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) ("[W]e have repeatedly warned against

11

equating the activities of daily living with those of a full-time job.") (citing *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). The ALJ noted that Plaintiff attended school, attended Bible study, cared for her minor child, drove forty-five minutes each way to work, and was employed as Zumba instructor.[5] Standing alone, this explanation may not pass muster under the Seventh Circuit's ruling, but here, the ALJ provided additional rationale for his credibility decision. Plaintiff's activities of daily living were merely a portion of his finding. *See Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir.2006) (stating that an ALJ must consider the entire case record when determining a claimant's credibility including the claimant's daily activities and limitations) (citation omitted). Accordingly, we find that no error occurred at this stage.

In a similar argument, Plaintiff alleges that the ALJ placed undue reliance on her position as a data-entry worker, equating it to an ability to perform full-time work, despite the fact that she had just begun the job at the time of her hearing and was already experience difficulty performing her job functions. But once again, the ALJ was allowed to weigh this fact as a part of his total analysis and apply it to his credibility determination. *See Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("In addition, [the claimant] continued to work as a carpenter, albeit on a part-time basis. Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled.").

---

[5] Plaintiff takes issue with this finding stating that she no longer teaches Zumba. Plaintiff's testimony was that, as of the date of her administrative hearing, she was still employed by a fitness club, but had not taught a class for two months. (R. 41.)

Next, Plaintiff claims that the ALJ did not articulate the volatility of her Global Assessment Functioning ("GAF")[6] scores over the course of her treatment, and instead only cited instances when it was at its highest point. To the contrary, the ALJ noted that Plaintiff's GAF scores ranged from 40 to 60 and tended to correspond to her homelessness. (R. 23.)[7] He also explained that she continued to participate in bible study and work as a fitness trainer despite her low scores which also undermined her credibility. This is not an instance of cherry-picking, but rather the ALJ simply weighing the evidence before making a determination. *Elder*, 529 F.3d at 413 (holding that the ALJ's decision must be affirmed even if "reasonable minds could differ" as long as "the decision is adequately supported.")

Lastly, Plaintiff complains that the ALJ used her non-compliance with medication and lack of treatment against her. An ALJ cannot discount a claimant's allegations of pain based on a failure to seek medical treatment without at least discussing the reasons given by the claimant for not seeking such treatment. *See*

---

[6] The GAF includes a scale ranging from 0–100, and indicates a "clinician's judgment of the individual's overall level of functioning." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. Text Rev. 2000) (hereinafter *DSM-IV*). A GAF score of 51–60 indicates moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or coworkers). *Id.* at 34. A GAF score of 41–50 indicates serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (*e.g.*, no friends, unable to keep a job). *Id.* The Court notes that the fifth edition of the DSM, published in 2013, has abandoned the GAF scale because of "its conceptual lack of clarity . . . and questionable psychometrics in routine practice." American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 16 (5th ed. 2013); *see Williams v. Colvin*, 757 F.3d 610, 613 (7th Cir. 2014) (recognizing that the American Psychiatric Association abandoned the GAF scale after 2012).

[7] Plaintiff states that it is "unclear" how Plaintiff's homelessness would be used to undermine her allegations rather than support them. This argument is simply a misreading of the ALJ's decision. In it he states that her condition was worsened by her homelessness, but still the record did not support a finding of disability. (R. 23.)

*Beardsley v. Colvin*, 758 F.3d 834, 840 (7th Cir. 2014) ("But the ALJ may not draw any inferences 'about a claimant's condition from his failure [to seek treatment] unless the ALJ has explored the claimant's explanations as to the lack of medical care.'") (quoting *Craft v. Astrue*, 539 F.3d 668, 679 (7th Cir. 2008)); SSR 96-7p, 1996 WL 374186, at *7.

Here, the ALJ stated that Plaintiff's 2012 records indicated that she "was not consistent in taking medications or attending appointments." (R. 22.) At the hearing, the ALJ questioned Plaintiff about her bouts of homelessness which occurred in 2013 and 2015. While he acknowledged her homelessness would contribute to infrequent treatment or medication, he failed to explore her reasoning for her 2012 non-compliance. (R. 475.) But, even if the ALJ incorrectly evaluated Plaintiff's lack of treatment, remand is not proper in this case because the Court need only disturb an ALJ's credibility determination where it is "patently wrong." *Schmidt,* 496 F.3d at 843. Here, the ALJ's credibility determination is otherwise supported by Plaintiff's work history, activities of daily living, and lack of objective medical evidence. Accordingly, the Court affirms the ALJ's credibly determination.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment [Doc. No. 10] is denied and the Commissioner's cross-motion for summary judgment [Doc. No. 13] is granted. Affirmed.

**SO ORDERED.**  **ENTERED:**

*/s/ Maria Valdez*

**DATE:     April 20, 2018**

**HON. MARIA VALDEZ**
**United States Magistrate Judge**